## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

**NELSON A. YOUNGBLOOD**                                      **CIVIL ACTION NO. 5:14-cv-2880**
     **LA. DOC #206949**

                                               **SECTION P**

**VS.**

                                              **JUDGE S. MAURICE HICKS**

**BURL CAIN, WARDEN, LOUISIANA**
**STATE PENITENTIARY**                                        **MAGISTRATE JUDGE HAYES**

### REPORT AND RECOMMENDATION

*Pro se* Petitioner Nelson A. Youngblood, a prisoner in the custody of Louisiana's

Department of Corrections, filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. §

2254 on October 3, 2014 [doc. # 1]. Petitioner attacks his second degree murder conviction and

the life sentence imposed by the First Judicial District Court, Caddo Parish. This matter has been

referred to the undersigned for review, report, and recommendation in accordance with the

provisions of 28 U.S.C. § 636 and the standing orders of the Court.

### Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> On May 19, 2007, Keisha and Jerome Avery drove from Houston to Shreveport,
> Louisiana, with a large amount of marijuana to sell to defendant, Nelson "Boo"
> Youngblood. The week before, defendant contacted Keisha and requested a
> substantially large amount of marijuana, 50 pounds, and 1,000 ecstasy pills. Once
> she and her husband obtained the marijuana, she contacted defendant to arrange
> the meeting. The parties did not meet until that evening because defendant kept
> stating that he was waiting on "his people." Rather than meeting as planned at a
> Sonic restaurant, defendant requested that the Averys meet him at a residence on
> Abilene Street, a location Keisha knew because she had been there before. When
> the couple arrived at Abilene Street, it was dark and they drove past the house.
> Defendant went to the end of the driveway and waved them back. A tall man, not
> known by the Averys, came outside and, without saying a word, turned around
> and went back into the house. As Jerome Avery took two garbage bags containing

30 pounds of marijuana out of the trunk, Keisha began chatting with defendant.

Defendant stated that "his people" were in the house. As Jerome Avery proceeded to enter the house, Keisha and defendant continued talking. Immediately upon entering the house, Jerome saw the tall man who had come outside sitting at a table and another man with a black bandana around his face holding an assault rifle. Jerome immediately dropped the marijuana bags, then turned around and ran out the house. Keisha was shot seven times by two different weapons, and she died as a result of her injuries.

Approximately two weeks prior to Keisha's murder, on May 3, 2007, defendant took Sakoria Williams to a pawn shop and she purchased for him an assault rifle, a Romanian WASR–10, and four boxes of Wolf 7.62x39 ammunition. No weapon was found at the scene; however, Wolf 7.62x39 spent cartridges were recovered.

Defendant and the two shooters fled with the marijuana. Defendant was subsequently arrested in Pearland, Texas, on November 24, 2007. Defendant, Nelson "Boo" Youngblood, was charged with the second degree murder of Keisha Avery, in violation of La. R.S. 14:30.1. Following a jury trial, defendant was found guilty as charged and he was sentenced to life imprisonment without benefits.

*State of Louisiana v. Nelson A. Youngblood,* 45,576 (La. App. 2 Cir. 9/29/2010), *rehearing denied* 10/28/2010), 48 So.3d 1122.

Petitioner appealed his conviction and sentence raising claims of insufficiency of the evidence and erroneous admission of other crimes evidence. *Id.* The Second Circuit Court of Appeal affirmed Petitioner's conviction and sentence on September 29, 2010. *Id.* at 1129. Petitioner moved for rehearing on October 13, 2010; however, his rehearing was denied on October 28, 2010. *Id.*; [docs. # 7-1, Exhibit A, pp. 1-7; # 1-2, Appendix A, pp. 3-18]. In pleadings dated November 26, 2010, petitioner, through counsel, sought further direct review in the Louisiana Supreme Court. [doc. # 7-1, Exhibit B, pp. 8-25]. On November 18, 2011, his writ application was denied without comment. *State of Louisiana ex rel. Nelson A. Youngblood v. State of Louisiana*, 2010-2689 (La. 11/18/2011), 75 So. 3d 458; [doc. # 1-2, Appendix B, pp. 19-

20].

According to petitioner, he filed a *pro se* application for post-conviction relief in the First Judicial District Court on January 11, 2013. *See* [doc. # 1, ¶11]. The application raised claims of ineffective assistance of trial and appellate counsel. [doc. # 1-2, Appendix C, pp. 21-49]. On July 22, 2013, the trial court denied relief and provided reasons for judgment. [doc. # 1-2, Appendix D, pp. 50-53].

Petitioner sought review in the Second Circuit Court of Appeal [doc. # 7-1, Exhibit C, pp. 26-59] and on September 12, 2013, the Court denied writs "[o]n the showing made." *State of Louisiana v. Nelson A. Youngblood*, No. 48,803-KH; [doc. # 1-2, Appendix E, pp. 54-56]. On October 4, 2013, petitioner sought further review in the Louisiana Supreme Court. [doc. # 7-1, Exhibit D, pp. 60-95]. On September 26, 2014, his application for writs was denied. *State of Louisiana ex rel. Nelson A. Youngblood v. State of Louisiana*, 2013-2393 (La. 9/26/2014), 149 So. 3d 254; [doc. # 1-2, Appendix G]. Petitioner filed the instant petition on October 3, 2014. [doc. # 1]. He raises the following claims: (1) insufficient evidence; (2) trial court erroneously denied Petitioner's objections to State's introduction of other crimes evidence; (3) ineffective assistance of counsel; (4) and denial of right to a fair trial and effective counsel on appeal when counsel failed to challenge the introduction of Petitioner's statement. *Id.* The matter is now before the Court.

## **Law and Analysis**

## I.     **Standard of Review – 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas*

claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal

review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct.

1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as

opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-

court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court

may grant the writ only if the state court "identifies the correct governing legal principle from . . .

[the Supreme Court's] decisions but unreasonably applies the principle to the facts of the

prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal

courts presume such determinations to be correct; however, a petitioner can rebut this

presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.    Petitioner's Claims

### A.    <u>Claim One: Insufficient Evidence</u>

Petitioner claims that the evidence presented at trial was insufficient to find him guilty of the charged crime. [doc. # 1, p. 6]. When a habeas petitioner asserts that the evidence presented was insufficient to support his conviction, the limited question is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Here, the Louisiana appellate court invoked and applied the *Jackson* standard, and it did so reasonably. *See Youngblood*, 48 So.3d at 1123. The appellate court referenced the definitions of second degree murder, armed robbery, and aiding and abetting. *Id.* at 1125. Specifically, LA. REV. STAT. ANN. 14:30.1 defines second degree murder, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Armed robbery is the taking of anything of value belonging to another from the person of another by use of force or intimidation, while armed with a dangerous weapon. LA. REV. STAT. ANN. 14:24. Further, LA. REV. STAT. ANN. 14:20(1) states that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, aid and abet in its

5

commission, or directly or indirectly counsel or procure another to commit the crime, are

principals.

The appellate court then set forth the testimony and evidence presented at trial as follows:

> Stephanie Rogers testified that she put Keisha Avery in contact with defendant on March 18, 2007. Ms. Rogers informed Keisha that defendant was in the business of distributing narcotics in the Cedar Grove area of Shreveport, a business the victim, Keisha Avery, was engaged in with her husband. Ms. Rogers' testimony established that defendant was acquainted with Keisha Avery. Defendant's own statement confirmed that he knew both Keisha and Jerome Avery through Stephanie Rogers. In fact, prior to Keisha's murder, some small drug transactions occurred between defendant and Keisha Avery.

> Sakoria Williams testified that approximately 16 days before the murder of Keisha Avery, defendant took her to National Jewelry and Loan, a pawnshop, to purchase an AK–47 assault rifle and Wolf brand 7.62x39 caliber ammunition. Casey Bolin, the pawn shop employee, corroborated Ms. Williams' testimony regarding the purchase of this rifle and ammunition. Ms. Williams testified that after she purchased the weapon, she left it in the vehicle with defendant. Ms. Williams further testified that defendant asked her to buy the weapon for him because he was a convicted felon and could not do so on his own.

> Richard Beighley, firearms supervisor at the North Louisiana Crime Lab, testified that the shell casings recovered from the scene were consistent with being fired from a rifle and not a handgun. Both the SKS and AK–47 look alike and use the same ammunition. Detective Rod Johnson also testified that the evidence obtained from the crime scene was consistent with the information provided on the sales receipt from National Jewelry and Loan in that the shell casings were of the same caliber and brand of ammunition purchased by Ms. Williams for defendant.

> Jerome Avery testified that he knew defendant through his wife, Keisha, who met defendant through Stephanie Rogers. While Avery testified that he was in the business of transporting narcotics, defendant was primarily his wife's contact. Avery stated that on two previous occasions his wife had delivered approximately three pounds of marijuana to defendant at a location on Abilene Street in Shreveport, Louisiana.

> Jerome Avery testified that approximately one week before his wife's murder, defendant contacted her to request a substantially large amount of marijuana, 50 pounds, and 1,000 ecstasy pills. The transaction was scheduled to take place on May 19, 2007. Avery testified that defendant requested that they meet on Abilene

Street, where Keisha had previously transacted business with him. Defendant in his statement to detectives confirmed that he was the one who requested they meet at the Abilene Street house.

When Keisha and Jerome Avery arrived at the residence on Abilene Street, Avery saw a tall man come outside before going back into the house. Defendant told Avery that "his people" were in the house. Avery testified that he took the marijuana bags out of the car and walked up to the house with Keisha and defendant following him. As soon as he entered, Avery noticed two men, one the tall guy who had just come outside; and the other man in the house was a shorter man holding an SKS assault rifle, his face was obscured by a bandana. Avery testified that, at that point, he knew a robbery and possibly a murder were about to happen, so he dropped the marijuana bags and ran. As soon as he took approximately two steps, the man with the assault rifle shot his wife. Because it happened within seconds of his entering the house, Avery testified that defendant was still under the carport because he had been following Keisha Avery into the house.

Jerome Avery identified defendant in court as the person he and his wife talked to on the phone, then met on Abilene Street. He testified that defendant was the only person who knew that they were transporting the marijuana. Lieutenant Carl Towney testified that the value of the amount of marijuana described by Avery ranged somewhere from $30,000 to $150,000.

The State also introduced evidence that defendant fled the jurisdiction. Layne Malich testified that defendant was on parole supervision and was not allowed to leave the jurisdiction without permission of the court. Additionally, defendant was required to report in to the office of probation and parole. While he reported regularly for a while, defendant's last report was on May 18, 2007, a day before this incident occurred. H.B. Shaver, Jr., testified that an ongoing search was initiated for defendant who was finally apprehended in Pearland, Texas, in November of 2007.

*Youngblood*, 48 So.3d at 1126-27.

Applying the *Jackson* standard, the appellate court held that the evidence in the case was

sufficient to support Petitioner's second degree murder conviction. *Id*. at 1127. The court

reasoned:

Defendant was the only person, out of all the people present at the house on Abilene Street, who knew all of the persons involved and knew that a large

> amount of marijuana would be delivered by the Averys. Defendant changed the meeting location to Abilene Street where two men with guns and bandanas were lying in wait. The shooting took place immediately. There was no negotiating, talking, or confrontation. None of the marijuana was recovered from the scene. The jury could have easily found that defendant was a principal to armed robbery which resulted in a murder.

*Id.* A review of the trial record shows that the appellate court's application of *Jackson* was objectively reasonable. This claim is without merit and should be **DENIED**.

**B.      Claim Two: Improper Admission of "Other Crimes" Evidence**

Petitioner claims that the state trial court erred in admitting evidence of other alleged crimes of Youngblood. [doc. # 1-1, p. 23]. Specifically, Petitioner objected to the use of "(1) [p]rior drug deals Mr. Youngblood allegedly had with Mrs. Avery; (2) [t]he alleged straw purchase of a Romanian WASR-10 AK-47; and (3) [t]hat Mr. Youngblood was a convicted felon," and testimony from his probation officer about him violating his probation. *Id.* Other crimes evidence may only be introduced in certain enumerated circumstances, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. LA. CODE EVID. art. 404(B). Youngblood contends that the evidence was inappropriate to prove motive, opportunity or intent under LA. CODE EVID. art. 404(B). [doc. # 1-1, p. 24].

This claim was addressed by the Louisiana Second Circuit in Youngblood's appeal. The appellate court referenced the trial court's ruling issued after a pretrial hearing on the admissibility of the evidence. *Youngblood*, 48 So.3d at 1128. At that hearing, the trial court determined that the evidence in question was admissible to prove Youngblood's planning, intent, guilty knowledge and motive. *Id.* Additionally, "the court found that the probative value outweighed any prejudicial effect." *Id.*

8

In reviewing the admissibility issue on appeal, the Louisiana Second Circuit held that "the evidence was an integral part of the criminal transaction—the evidence convincingly showed that this was a planned robbery/murder." *Id.* Although the Court did find the introduction of two pieces of evidence "troubling:" testimony that Youngblood was on parole and the State's presenting a rifle similar to the weapon used in the murder. *Id.* However, the Court of Appeals held that any errors were harmless. *Id.* Finding no abuse of discretion by the state trial court, the appeals court found the claim meritless. *Id.*

Petitioner asks the Court to reexamine the state courts' determinations of state law. In that regard, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Evidentiary errors of state law are generally not cognizable in federal habeas review, unless the errors were so prejudicial as to result in a denial of a constitutionally fair proceeding. *See Swarthout v. Cooke*, 526 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). The states are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee. *Burget v. Texas*, 389 U.S. 109, 113-14 (1967).

Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Lisenba v. People of the State of California*, 314 U.S. 219, 236–37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.) The United States Court of

9

Appeals for the Fifth Circuit has stated that a petitioner can obtain federal habeas corpus relief only if evidence is erroneously admitted and "played a crucial, critical, and highly significant role in the trial." *Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011) (quotation omitted). Under this standard, a habeas petitioner must establish that the evidence was both erroneously admitted and prejudicial. *Id.*

Whether evidence is admitted or excluded contrary to the Due Process clause is a mixed question of law and fact. *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997); *see Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000) (issues of due process present mixed questions of law and fact). This court on habeas review must determine if the state courts' denial of relief on the issue was contrary to or involved an unreasonable application of Supreme Court precedent.

In the instant case, the Louisiana courts found Defendant's other crimes evidence admissible—prior drug deals with Mrs. Avery, the alleged straw purchase of an AK-47 and testimony from his parole officer that he violated his parole. *Youngblood*, 48 So.3d at 1129. Although the Second Circuit did find the introduction of two pieces of evidence "troubling." First the Court noted that the testimony of defendant's parole officer did not show system, knowledge, intent or motivation. *Id.* However, other admissible evidence had already shown that defendant was on parole and thus the Court deemed the error harmless. *Id.* Next, the Court found problematic the State's presentation to the jury of an AK-47 "similar" to the weapon that was used to shoot the victim. *Id.* The Court allowed this demonstrative despite the fact that no weapon was recovered in connection with the murder of Keisha Avery and the demonstrative weapon was merely a rifle that looked similar to the rifle allegedly purchased by Sakoria Williams for the defendant. The Second Circuit again found that if there was any error, it was

harmless. *Id.*

Here, the Court cannot say that the evidence of Petitioner's prior acts played a crucial or highly significant role in Petitioner's conviction. In the last reasoned opinion on this issue, the Louisiana Second Circuit held that the evidence formed a part of the evidence necessary to establish the Defendant's criminal transaction. The Court agrees with the Louisiana Second Circuit Court of Appeal's observation that "[w]ith the exception of the testimony concerning defendant being on parole, the evidence was an integral part of the criminal transaction—the evidence convincingly showed that this was a planned robbery/murder." *Id.* As such, the evidence was admissible under Louisiana law.

The record establishes, and the state courts held, that the evidence was not introduced to impugn Youngblood's character or depict him as a bad man. Instead, the testimony was properly admitted to establish matters essential to the charges, including his plan to commit the robbery/murder of Mrs. Avery. Any testimony regarding the Defendant's status as a parolee was not prejudicial, since other admissible evidence had already shown the defendant was on parole. Additionally, other courts have deemed the introduction of similar evidence regarding the straw purchase of the AK-47 rifle as harmless. *See State v. Burd*, 40,490 (La. App. 2d Cir. 01/27/06), 921 So.2d 219, *writ denied*, 06–1083 (La.11/09/06), 941 So.2d 35. Thus if any error did exist it was harmless, and did not "play[] a crucial, critical, and highly significant role in the trial." *Gonzales*, 643 F.3d at 430.

Petitioner has not demonstrated that the evidence at issue constituted inadmissible other crimes evidence that rendered his trial fundamentally unfair. *See Orman v. Cain*, 228 F.3d 616, 619 (5th Cir. 2000) ("A habeas petitioner has the burden to prove that he is entitled to relief.").

11

Because he has not demonstrated any error in the admission of the evidence, he does not have any basis for an alleged due process violation. Without a due process violation, he has failed to present a cognizable basis for federal habeas corpus relief. In light of the overwhelming evidence against Youngblood, the Court finds that the trial court's decision to admit evidence of Youngblood's other crimes did not fatally infect the fairness of his trial or have a substantial and injurious effect on the jury's verdict. This claim should be **DENIED**.

**C.      Claim Three: Ineffective Assistance Of Counsel**

Petitioner alleges that his trial attorney was ineffective for: (i) failing to object at the appropriate time when the testimonies were heard by the jury; (ii) failing to object to state's leading questions; (iii) failing to conduct a reasonable investigation on whether the SK assault rifle used the same 76x10 bullets as the AK 47 rifle allegedly used in the murder; (iv) failing to object to the prosecutor's coaching of witnesses; (v) failing to challenge Sakoria Williams credibility with inconsistent statements; and (vi) failing to file a motion for an independent expert witness to challenge Richard Beighley's opinion. [doc. # 1-1, p. 29–42].

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thornton*, 646 F.3d 199 (5th Cir. 2011). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the petitioner of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686–87 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Id.* If the petitioner does not make a sufficient showing as to one prong of the test, the other

prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997). The prongs

of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162,

172 n. 6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of

ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v.

Johnson*, 160 F.3d 1029, 1042–43 (5th Cir. 1998).

In applying the first prong of Strickland, a court should presume that the attorney's

actions are encompassed within the wide range of reasonable competence and fall under the

ambit of trial strategy. *See Strickland*, 466 U.S. at 689–90. The petitioner must show that the

performance of counsel fell "outside the wide range of professionally competent assistance." *Id.*

at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994). There is a strong presumption that counsel

performed adequately and exercised reasonable professional judgment. *Virgil v. Dretke*, 446 F.3d

598, 608 (5th Cir. 2006).

To establish prejudice, the second prong, the petitioner must demonstrate that counsel's

actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *U.S.

v. Saenz–Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir.

1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not

deprive the defendant of any substantive or procedural right to which the law entitles him."

*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th

Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones

v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the

defendant demonstrates that he would have received less jail time. *U.S. v. Grammas*, 376 F.3d

433, 436 (5th Cir. 2004).

i.     **Failure to Object at the Appropriate Time when the Testimonies were Heard by the Jury**

Petitioner alleges that his trial counsel was ineffective "when [Counsel] failed to lodge an appropriate objection at the time the error was made before the jury." [doc. # 1-1, p. 30]. For instance Petitioner alleges that his counsel failed to object to other crimes evidence and failed to object to State's multiple leading questions. *Id.* Petitioner also complains that counsel failed to object to Jerome Avery's hearsay testimony. *Id.* The Court notes, initially, that counsel is not required to make futile motions or objections. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). In addition, an attorney's choice of whether or not to make certain objections falls within the ambit of "trial strategy" and will not stand as support for an ineffective assistance of counsel claim. *Maggio*, 736 F.2d at 283.

The record shows that Defense counsel objected to the other crimes evidence introduced by the State and filed a motion to redact statements. [doc. # 21-4, p. 177-184]. Petitioner complains however, that the various objections made by defense counsel were not in the presence of the jury when the alleged error occurred and thus, "the jury was forced to accept as true the State['s] version of events without the slightest interruption by defense counsel." [doc. # 1-1, p. 30]. However, counsel is not required to make futile objections and has discretion to make strategic trial decisions. The decision to refrain from objection in front of the presence of the jury is a decision within the "ambit of trial strategy." *See Strickland*, 466 U.S. at 689–90. Given the highly deferential scrutiny accorded to counsel's tactical decisions, the Court cannot conclude that counsel's performance was deficient.

ii.    **Failure to Object to State's Leading Questions**

14

Petitioner contends that defense counsel should have objected to the State's leading questions and also impeached witness Jerome Avery. [doc. # 1-1, p. 31-32]. As stated above, an attorney's choice of whether or not to make certain objections falls within the ambit of "trial strategy" and will not stand as support for an ineffective assistance of counsel claim. *Murray*, 736 F.2d at 283. The Fifth Circuit has stated that "failure to object to leading questions and the like is generally a matter of trial strategy as to which [this court] will not second guess counsel." *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993). Furthermore, "there can be no *Strickland* claim where a petitioner fails to 'explain how those instances likely would have resulted in a different trial outcome.'" *Villanueva v. Stephens*, 555 F. App'x 300, 307 (5th Cir. 2014) (quotation omitted).

Here, while petitioner alleges his counsel failed to impeach witness Jerome Avery, defense counsel did bring into question the credibility of the witness in the presence of the jury. *See* [doc. # 21-10, p. 76-93]. Moreover, Youngblood has failed to show how the failure to impeach Jerome Avery or failure to object to leading questions prejudiced him such that the outcome would have been different. *See Rushing v. Butler*, 868 F.2d 800, 806 (5th Cir. 1989) (dismissing claim concerning failure to object to leading questions because "even if we were to surmise that defense counsel's performance was, in fact, deficient . . . [Petitioner]'s claims of ineffective assistance of counsel must fail under the prejudice prong of the *Strickland* analysis."). Since a failure to object to a leading question is generally a matter of trial strategy and defense counsel did bring Avery Jerome's credibility into question, this claim lacks merit.

### iii.    Failure to Conduct Reasonable Investigation

Next Petitioner asserts that defense counsel failed to conduct a thorough investigation

concerning evidence in his case. He argues that defense counsel allowed the State to introduce a demonstrative assault rifle that was neither the actual murder weapon nor the same type purchased by Ms. Williams on behalf of the defendant. [doc. # 1-1, p. 37]. Petitioner also alleges that trial counsel failed to impeach Jerome Avery on his inconsistent testimony regarding whether the rifle he saw was equipped with one barrel drum or two. *Id.* at 39.

Police were able to recover Wolf 7.62x39 casings at the scene of the shooting. *Youngblood*, 48 So. 3d at 1124. Testimony was given during trial that Sakoria Williams had purchased a Romanian WASR–10[1] rifle and two boxes of 7.62x39 ammo for Youngblood sixteen days prior to the shooting. *Id.* Jerome Avery testified that he saw a man before the shooting holding a "SKS assault rifle." *Id.* at 1127. A ballistics expert for the State testified that the casings recovered on the scene were a fit for the WASR–10 rifle purchased for Youngblood. *Id.* at 1124. The State introduced a demonstrative rifle to the jury similar to the rifle allegedly purchased by Sakoria Williams for Youngblood. [docs. # 21-9, p. 122; # 1-1, p. 39]. The State did not assert that it was the weapon used in the murder, but it did assert that the rifle was similar to the rifle purchased for Youngblood by Mrs. Williams. *Id.*

According to Petitioner, this allowed the State to assert that Mr. Youngblood purchased a weapon that used the same ammunition found at the scene of the murder, "thus, magically placing Mr. Youngblood on the scene of a murder." Youngblood argues that if his counsel had conducted a reasonable investigation through a ballistics expert, he would have realized that the SKS rifle–that was identified by Mr. Avery as the murder weapon–also used this type of bullet. [doc. # 1-1, p. 39]. Petitioner contends that the Prosecution was allowed to present this evidence

---

[1] Also described as an AK-47 throughout various pleadings.

16

to the jury uncontested and unchallenged by the defense, resulting in a breakdown of the adversarial process. *Id.*

An attorney's failure to investigate the case against the defendant and to develop evidence can support a finding of ineffective assistance. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). In order to establish that counsel was ineffective due to a failure to investigate the case, the petitioner must do more than merely allege a failure to investigate. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994). The Petitioner must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial. *Id.*; *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). As with any ineffective assistance of counsel claim, the petitioner must prove that an alleged breach of his attorney's duty to investigate "resulted in an actual and substantial disadvantage to the course of his defense." *Baldwin v. Maggio*, 704 F.2d 1325, 1333 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The petitioner may not simply allege, but must "affirmatively prove," prejudice. *See Strickland*, 466 U.S. at 693.

If defense counsel had performed a reasonable investigation and determined that the ammunition found at the murder scene also matched the SKS rifle, it would make the probability that the WASR–10 was used in the murder of Keisha Avery less likely. As Petitioner notes, defense counsel might have discovered this information through a ballistics expert. Thus, Petitioner has stated with specificity what the investigation would have revealed and how it would have been disclosed. However, the Petitioner has not demonstrated how the evidence would have altered the outcome of the trial. Even if Youngblood did not have the WASR–10 at

17

the murder scene, he could still be convicted as a principal for aiding and abetting the robbery/murder of Keisha Avery through additional evidence. *Youngblood*, 48 So.3d at 1126-27. Therefore, the Petitioner has not affirmatively proven prejudice.

To the extent Petitioner alleges a failure by defense counsel to impeach the witness Jerome Avery, that claim lacks merit. Defense counsel did question Jerome Avery's credibility during his cross-examination and Petitioner has not demonstrated how such an error might have prejudiced his defense. *See supra* Part II.C.ii. Although defense counsel did not specifically question Jerome Avery concerning his inconsistencies on whether the rifle was a double or single barrel, the decision falls within the ambit of "trial strategy." [doc. # 21-10, p. 76-93]. A trial strategy decision is within the discretion of the attorney and will not stand as support for an ineffective assistance of counsel claim. *Murray*, 736 F.2d at 283. With that in mind, the court finds that Petitioner's claims concerning the failure to investigate and failure to impeach the witness lack merit.

### iv.     Failure to Object to the State's Coaching of Witnesses and Leading Questions

Petitioner asserts that his attorney failed to object to the State coaching witnesses Sakoria Williams and Stephanie Rogers, as well as failing to object to leading questions. [doc. # 1-1, p. 41]. Petitioner highlighted the following testimony of Sakoria Williams as evidence of witness coaching:

Q.     Once you received [the rifle], what did you do with it?

A.     Take it home. Put it in the car and took it back home.

Q.     And you say – you took the rifle back home or you just went home?

A.     Could you repeat that?

Q.      Did you take the rifle back home or did you just go home?

A.      No. I just went home. The rifle didn't go with me.

*Id.* at 40-41.

As stated above, counsel is not required to make futile motions or objections. *Koch*, 907 F.2d at 527. An attorney's decision of whether or not to make objections falls within the ambit of "trial strategy" and will not stand as support for an ineffective assistance of counsel claim. *Murray*, 736 F.2d at 283. Also, "failure to object to leading questions and the like is generally a matter of trial strategy as to which [this court] will not second guess counsel." *Burnett*, 982 F.2d at 930.

Here, counsel's decision not to object amounts to trial strategy and will not support Petitioner's claim of ineffectiveness. Moreover, the Court notes that Petitioner has not demonstrated that the State coached any witnesses. During the portion of the testimony from Sakoria Williams that Petitioner cites, the State merely clarified the answer of a witness. It does not appear from a review of the record that either witness listed by Petitioner was coached by the State. Consequently, counsel is not considered ineffective for failing to object to the State's clarifying a witness's answer. In other words, any objection would have been groundless.

**v.      Failure to Challenge Sakoria Williams' Credibility**

Petitioner claims that defense counsel failed to challenge Sakoria Williams' testimony with prior inconsistent statements. [doc. # 1-1, p. 41]. Petitioner states that defense counsel should have brought to the "jury's attention Ms. Williams' pre-trial testimony that the assault rifle she purchased did not have a round drum on it." *Id.* Petitioner asserts the defense counsel was aware that Ms. Williams testimony was different from Jerome Avery's identification of the

rifle, "but failed to challenge her credibility." *Id.*

To prove an ineffective assistance of counsel claim the petitioner must affirmatively prove prejudice. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland*'s prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999). Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland*, 466 U.S. at 689–94.

Here, the Petitioner has not satisfied the prejudice element of the *Strickland* analysis. Petitioner only uses conclusory allegations that the witness was lying throughout her testimony, without any other support. Moreover, a review of the record reflects that defense counsel did in fact challenge Sakoria Williams' credibility. Defense counsel was able to reveal inconsistencies between her initial testimony and her testimony when she was re-called. [doc. # 21-11, p. 61-64]. Counsel is given discretion on decisions involving trial strategy. *Murray*, 736 F.2d at 283. The Court finds that counsel's decision not to further challenge the witness's credibility amounts to trial strategy and does not constitute deficient performance.

**vi.     Failure to File a Motion for an Independent Expert Witness**

Finally, Petitioner argues that defense counsel failed to obtain an independent firearms expert to dispute the testimony of the State's expert witness. [doc. # 1-1, p. 42]. He also alleges

that defense counsel should have questioned the State's expert witness more about how he reached his conclusions. *Id.* "[U]nsupported claims regarding [an] uncalled expert witness are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

> "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."

*Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *see also Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).

In the instant case, Petitioner has not set out the content of the witness's proposed testimony, only that the firearm expert "could have" testified differently and would have disagreed with the State's expert. *See* [doc. # 1-1, p. 44]. Also, Petitioner does not name an available expert who would have testified in a manner favorable to the defense. The Court finds that petitioner has failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to call such an expert witness. Additionally, counsel's decision not to question the State's expert more on how his conclusions were reached was a valid use of counsel's discretion and falls under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689–90; *Murray*, 736 F.2d at 283.

In Petitioner's response to Respondent's answer, he contends that while his counsel may not have committed an error that "rises to constitutional dimensions," the cumulative effect of the several errors by defense counsel denied him the right to a fair trial. [doc. #22, p. 9]. Relying on *Taylor v Kentucky*, Petitioner believes that his due process rights were violated by the

cumulative effect of defense counsel's errors. 436 U.S. 478, 487 (1978).

In *Taylor*, the Supreme Court was confronted with a situation where a defendant was not given a jury instruction at trial that informed the jury that the defendant was presumed innocent until proven guilty. *Taylor*, 436 U.S. at 480-81. The Court concluded that the absence of this jury instruction, in light of other unfair circumstances during trial, violated the defendant's Fourteenth Amendment right to a fair trial. *Id.* at 491. The relevant question is whether the alleged errors "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)*; Darden v. Wainwright*, 477 U.S. 168, 181 (1986). After a review of the individual claims asserted by Petitioner for ineffective assistance of counsel, the Court does not find a sufficient number of errors by defense counsel to have a cumulative effect of depriving Petitioner of a fair trial. *See Darden v. Wainwright*, 477 U.S. 168, 183 (1986) (finding trial was not perfect, but was not fundamentally unfair).

Petitioner has failed to demonstrate that he received ineffective assistance of counsel. Accordingly, it is recommended that Petitioner's ineffective assistance of counsel claims be **DENIED**.

## D.   Claim Four: Counsel Failed to Challenge Introduction of Petitioner's Statement

Lastly, Petitioner contends that he was denied a right to a fair trial and effective assistance of counsel on appeal due to defense counsel's failure to challenge the introduction of statements made by Petitioner. [doc. # 1-1, p. 50]. In the trial, Det. Johnson testified about a statement allegedly made to him by Youngblood. Petitioner asserts that the introduction of that evidence allowed "the State . . . to disregard Mr. Youngblood's right to remain silent and . . . made him a witness against himself through the testimony of Det. Johnson." *Id.* at 52.

"[S]tatements obtained during a custodial interrogation without providing adequate warnings under *Miranda* are inadmissible." *United States v. Courtney*, 463 F.3d 333, 336 (5th Cir. 2006). Thus any statement made by Petitioner before any *Miranda* warning had been given would be inadmissible. However, the record reflects that Youngblood was given *Miranda* warnings before the statements were made to police. [Doc. # 1-2, p. 80].

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Strickland*, 466 U.S. at 686–87 (1984). Defense counsel on an appeal does not have a constitutional duty to raise every non-frivolous issue requested by the defendant and is not required to make futile motions or objections. *Jones v. Barnes*, 463 U.S. 745 (1983); *Koch*, 907 F.2d at 527. Counsel is given discretion on decisions involving trial strategy and those decisions will not stand as support for an ineffective assistance of counsel claim. *Murray*, 736 F.2d at 283. Since it is a matter of professional judgment whether to present those issues advanced by the defendant, defense counsel's decision was a matter of trial strategy. *See Jones*, 463 U.S. at 754.

Here, Petitioner was read his *Miranda rights* which advised him that anything he said could be used against him in a criminal trial. [doc. # 1-2, p. 80]. Whether raising the issue concerning the introduction of Petitioner's statement would have been futile or not, appellate counsel's actions were well within the objective standard of reasonableness. Likewise, Petitioner is unable to show that appellate counsel's actions prejudiced his defense. The decision not to raise this particular issue during the appeal does not amount to ineffective assistance of counsel. This claim should be **DENIED**.

23

## Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of *habeas corpus* filed by Petitioner Nelson A. Youngblood, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum**

**setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C.

§ 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at**

**the time of filing.**

In Chambers, Monroe, Louisiana, this 3rd day of November, 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE